UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADAN STEVEN BOJORGE-
SEQUEIRA,

                Petitioner,

      v.

GEO GROUP INC., *et al.*,

                Respondents.

CASE NO. 2:25-cv-01807-KKE-GJL

REPORT AND RECOMMENDATION

Noting Date: February 2, 2026

Petitioner Adan Steven Bojorge-Sequeira, proceeding *pro se*, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. He has been detained since August 8, 2025. Dkt. 7 at ¶ 8 (Delgado, J. Decl.). On September 18, 2025, Petitioner filed a Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking release from custody. Dkt. 1.

The Government has filed a Response arguing Petitioner's detention is lawful under 28 U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment. Dkt. 5. Petitioner has filed a Reply. Dkt. 8.

REPORT AND RECOMMENDATION - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **RECOMMENDS** the habeas Petition (Dkt. 1) be **GRANTED**, Respondents' request that the Petition be dismissed (Dkt. 5) be **DENIED**, and that the Government be **ORDERED** to provide Petitioner with a bond hearing before an Immigration Judge within **fourteen (14) days** of the Court's Order.

## I.     BACKGROUND

Petitioner is a native and citizen of Nicaragua. Dkt. 7 (Delgado Decl.) ¶ 3. On or around May 9, 2021, Petitioner entered the United States without inspection and was apprehended by border patrol agents at that time. *Id*. On May 10, 2021, the U.S. Border Patrol determined that Petitioner was inadmissible to the United States and issued a Form I-860, Notice and Order of Expedited Removal. *Id*.; Dkt. 6-1, Ex. 1 (Strong, J. Decl.). Petitioner expressed fear of returning to Nicaragua at that time. Dkt. 7 ¶ 3.

On June 15, 2021, the U.S. Border Patrol released Petitioner on parole pending an interview with an asylum officer with the United States Immigration and Citizenship Services ("USCIS"). *Id*. ¶ 4; Dkt. 1-1, Ex. C. Petitioner subsequently filed a Form I-589, an application for asylum and for withholding of removal, with USCIS on August 8, 2022. Dkt. 7 ¶ 5; *see* Dkt. 1-1, Ex. E. His case remained pending before an asylum officer, with one Notice of Action filed on October 6, 2022, informing Petitioner that, among other things, he may remain in the United States until his asylum application is decided. Dkt. 1-1, Ex. E.

On July 21, 2025, USCIS dismissed Petitioner's asylum application due to lack of jurisdiction, but it was referred to the immigration court for review under Section 240 of the Immigration and Nationality Act ("INA"). Dkt. 7 ¶ 6.

On August 8, 2025, the U.S. Border Patrol issued Petitioner a Notice to Appear ("NTA"), charging him as inadmissible under Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of INA, codified at 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I), for entering the United States without having been admitted or paroled and for lacking valid travel documents. Dkt. 7 ¶¶ 6, 7; Dkt. 6-2, Ex. 2. Petitioner was arrested on that same day in Bethpage, New York, taken into ICE custody, and transferred to NWIPC. Dkt. 7 ¶ 8. While awaiting a merits hearing on his asylum application, Petitioner requested and received a bond hearing before an Immigration Judge ("IJ"). *See* Dkt. 1-1, Ex. A (Custody Order). On August 25, 2025, the IJ concluded the court lacked jurisdiction to grant bond due to the mandatory detention provisions of 8 U.S.C. §§ 1225(b)(1) and 2(a). *Id*. at 3, Ex. A.

On October 10, 2025, Petitioner appeared with counsel for a merits hearing on his asylum application. *Id*. ¶ 9. At the conclusion of the hearing, the IJ denied Petitioner's asylum application and ordered him removed to Nicaragua. *Id*. ¶ 9; Dkt. 6-3, Ex. 3. Petitioner reserved his right to appeal the decision. Dkt. 6-3 at 5, Ex. 3. Petitioner remains detained in ICE custody at NWIPC. Dkt. 7 ¶ 10.

Prior to the merits hearing before the IJ, Petitioner filed the instant habeas Petition on September 18, 2025. Dkt. 1. The Court directed service on September 19, 2025, Dkt. 3, and Respondents filed a Return on October 20, 2025, Dkt. 5. After Petitioner filed his Traverse, Dkt. 8, on November 26, 2025, the Court directed Respondents to file a status update as to Petitioner's immigration proceedings. Dkt. 9. In their status report filed December 1, 2025, Respondents report that Petitioner filed an appeal to the Board of Immigration Appeals ("BIA") on October 19, 2025. Dkt. 10. The BIA acknowledged receipt of the appeal on October 27, 2025. *Id*.

REPORT AND RECOMMENDATION - 3

## II.   STATUTORY FRAMEWORK

Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1) and (2)(a). Dkt. 1-1, Ex. A.[1] Title 8 of the United States Code §§ 1225, 1226, and 1231 governs immigration detention. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1225 applies to "applicants for admission"—noncitizens[2] who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). "Applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id*. (citing § 1225(b)(1)(A)(i)). The *Jennings* Court found that Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id*.

Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order. 8 U.S.C. § 1225(b)(1)(A)(i). But, if a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer the noncitizen

---

[1] In his Petition, Petitioner appears to argue that he is not subject to mandatory detention under 8 U.S.C. § 1225(b); rather his detention is authorization by the discretionary section 1226(a). Dkt. 1 at 6. However, Petitioner does not dispute that he is a noncitizen who is present in the United States and has not been admitted. *Id*. at 3. As such, under the current statutory scheme, Petitioner is an "applicant for admission" and thus, as set forth by the IJ in its August 25, 2025, Order denying bond, subject to mandatory detention under § 1225(b).

[2] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

REPORT AND RECOMMENDATION - 4

for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

The statute does not impose "any limit on the length of detention" pending a decision on the asylum application and does not authorize bond hearings or release on bond. *Jennings*, 583 U.S. at 296-301.

Section 1231 governs the detention and release of noncitizens who have been ordered removed. During the "removal period," which typically lasts 90 days, detention is mandatory. 8 U.S.C. § 1231(a)(2). The removal period is triggered by the latest of the following: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). If ICE is unable to remove the noncitizen during the removal period, DHS may continue to detain certain noncitizens specified in the statute or release them under an order of supervision. 8 U.S.C. § 1231(a)(6). Section 1231(a)(6), however, does not authorize indefinite detention.[3] *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In addition, the Ninth Circuit has held that noncitizens subject

---

[3] The Court briefly notes here that Petitioner cites *Zadvydas* in support of his argument that his detention has become indefinite. Dkt. 1 at 6. However, *Zadvydas* provides that due process protections cover non-citizens subject to final orders of removal and provides limits for how long those non-citizens may be detained. *See Zadvydas*, 533 U.S. at 693–701. Here, Petitioner is not at present subject to a final order of removal. *See* Dkt. 1.

REPORT AND RECOMMENDATION - 5

to prolonged detention under § 1231(a)(6) are entitled to a bond hearing. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011).

### III.    LEGAL STANDARD

Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Consequently, "[d]istrict courts have grappled with how to address due process challenges to prolonged mandatory detention[.]" *Id.* And "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (cleaned up).

In assessing the constitutionality of prolonged mandatory detention, the Court in *Banda* declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07. Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this district have now adopted the "*Banda* test" to assess when detention violates due process. *See, e.g.*, *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, at *4–7 (W.D. Wash. Dec. 5, 2025); *Belqasim v. Hermosillo*, No. 2:25-cv-1282-LK, 2025 WL 3466971, at *7–10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Maliwa v. Scott*, No. 2:25-cv-0788-TMC, 2025 WL 2256711, at

REPORT AND RECOMMENDATION - 6

*3–4 (W.D. Wash. Aug. 7, 2025); *Hong v. Mayorkas*, No. 2:20-cv-1784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022). The Respondents acknowledge that courts in this District analyze this issue using the *Banda* multi-factor test (Dkt. 5 at 11–12), and the Court will likewise apply the *Banda* test in determining if Respondents have met their burden of proving that Petitioner's continued detention without a bond hearing is justified.

**IV.    DISCUSSION**

**A.    The *Banda* Factors**

      1.    <u>Total Length of Detention</u>

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

*Banda* relied on several cases from the Southern District of New York. First, in *Perez*, the court found that a period of nine months favored the petitioners, reasoning that "the length of detention has surpassed the rough six-month threshold at which detentions become less and less reasonable." *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018). In *Lett*, the court found that 10 months was sufficient to favor the petitioner. *Lett v. Decker*, 346 F. Supp. 3d 379, 387–88 (S.D. N.Y. 2018).

In the wake of *Banda*, courts in the Western District of Washington have considered a range of periods that favor the detainee. *Ashemuke v. ICE Field Off. Dir.*, No. 2:23-cv-1592-RSL, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (eleven months); *Rahman v. Garland*, No. 2:24-cv-02132-JHC, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom; Anisur R. v. Garland*, 2025 WL 1919252 (W.D. Wash. July 11, 2025) (twelve months); *Murillo-Chavez v. Garlan*d, No. 2:22-cv-303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (nineteen months); *Doe v. Bostock*, No. 2:24-cv-0326-JLR, 2024 WL 3291033, at *10 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (fifteen months); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 929–30 (W.D. Wash. 2020) (eighteen months).

Courts examining shorter periods of time have found the factor neutral. *See, e.g.*, *Odimara v. Bostock,* No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) ("Petitioner was detained for four months at the time he filed his Petition, and his detention has now extended to approximately six months. Because Petitioner's current detention has reached—but not yet exceeded—the brief period of detention upheld in *Demore*, this first factor is neutral or, at most, weighs slightly in favor of granting a bond hearing.").

Here, Petitioner was detained for less than three months at the time he filed his Petition, and his detention has now extended to approximately five months. Dkt. 1; Dkt. 7 ¶¶ 8–10. Because Petitioner's current detention has not yet reached the length of time many courts have found to be unreasonable, the Court finds the first *Banda* factor weighs slightly in favor of Respondents.

REPORT AND RECOMMENDATION - 8

2.    Likely Duration of Future Detention

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. at 859). In *Banda*, for example, the Court noted that the petitioner had recently filed an appeal of a removal order with the BIA. *Id.*, 385 F. Supp. 3d at 1119. As the court explained, if the BIA were to affirm the removal order, the petitioner could seek review in the Ninth Circuit. *Id.* That process, the court found, might "take up to two years or longer." *Id.* (citation omitted). Thus, the *Banda* court found that the factor favored granting the petitioner a bond hearing. *Id.*; *see also Hong*, 2022 WL 1078627, at *7 (noting that appeals in the Ninth Circuit typically pend for twelve to twenty months before argument and then an additional three months to a year before decision, and finding the factor favors petitioner).

In cases like *Banda*, *Djelassi*, and *Hong*, where the courts found that the length of appeal favored the petitioner, an appeal had already been filed. *See Banda*, 385 F. Supp. 3d at 1119; *Hong*, 2022 WL 1078627, at *7; *Djelassi*, 434 F. Supp. 3d at 931; *see also Murillo-Chavez*, 2022 WL 16555994, at *5; *Leaupepetele v. ICE Field Off. Dir.*, No. 2:21-CV-961-RJB, 2021 WL 5450790, at *5 (W.D. Wash. Nov. 4, 2021), *report and recommendation adopted*, 2021 WL 5447918 (W.D. Wash. Nov. 22, 2021). Where proceedings are in much earlier stages, courts have found the factor neutral. *See Rahman*, 2025 WL 1920341, at *4; *Doe*, 2024 WL 3291033, at *10.

Here, Petitioner has now filed an appeal with the BIA, which acknowledged receipt of this appeal on October 27, 2025. *See* Dkt. 10. Given the length of time the appeals process can

REPORT AND RECOMMENDATION - 9

take, the Court finds that the second *Banda* factor weighs in favor of Petitioner. *See Toktosunov*, 2025 WL 3492858, at 5 (finding BIA appeals take over six months).

### 3.    The Conditions of Detention

Next, the Court considers the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6; *see also Amhirra v. Warden*, No. 2:25-cv-1376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025); *Toktosunov*, 2025 WL 3492858, at *5; *Rahman*, 2025 WL 1920341, at *4 (citing cases). Thus, the Court finds the third *Banda* factor favors Petitioner.

### 4.    Delays in Removal Proceedings (by Petitioner and Respondents)

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the Government, respectively. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 2:18-cv-1669-RAJ, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.*

REPORT AND RECOMMENDATION - 10

With respect to the Government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Here, there is no indication in any of the filings before the Court that either Petitioner or Respondents caused any delays in the proceedings. *See* Dkts. 1, 5, 8. Thus, the Court finds that fourth factor favors Petitioner, while the fifth factor favors Respondents.

### 5. Likelihood of Final Order of Removal

Under the final *Banda* factor, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). Here, Respondents argue that, due to Petitioner's appeal,[4] "it would be speculative to conclude that he will be entitled to relief from removal." Dkt. 5 at 12. The Court agrees, and thus finds this sixth *Banda* factor neutral.

### 6. Weighing the Factors

In sum, three of the six *Banda* factors weigh in favor of granting Petitioner a bond hearing, and one of the factors is neutral. Two of the factors weigh in favor of Respondents. However, one of those factors—the length of detention—is the most important factor. *See Banda*, 385 F. Supp. 3d at 1118. Nonetheless, the Court has determined that this factor weighs only slightly in favor of Respondent. *See* Part IV.A.1, at 7–8. Since three of the other *Banda* factors clearly favor Petitioner, the Court concludes that the *Banda* test as a whole favors

[4] At the time Respondents filed their Response to the Petition, Petitioner had not yet filed his appeal to the BIA, but had reserved his right to do so. *See* Dkt. at 7–8. Nevertheless, Respondents' argument applies in light of Petitioner's now pending appeal. *See* Dkt. 10.

REPORT AND RECOMMENDATION - 11

Petitioner, and that his "continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide him with a bond hearing." *See Banda*, 385 F. Supp. 3d at 1120.

**B.      Appropriate Relief**

Having found that Petitioner's detention has become unreasonable, the Court turns to the scope of habeas relief. In his Petition, Petitioner asks the Court to "release me on reasonable terms so that I can effectively continue to pursue my immigration applications." Dkt. 1 at 7. In their Return, Respondents contend that Petitioner is not entitled to release, but if the Court were to grant habeas relief, the only appropriate relief would be for Petitioner to have a bond redetermination hearing in immigration court.

Courts in this district have refused to order immediate release, finding that "[t]here is no authority" to support a claim that a petitioner "is entitled to an order of release." *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *9 (quoting *Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *8 (W.D. Wash. May 5, 2021)), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021); *see also Hong*, 2022 WL 1078627, at *7 (explaining that the remedy for prolonged detention is a bond hearing); *Pasillas v. ICE Field Off. Dir.*, No. 2:21-cv-681-RAJ, 2021 WL 8084206, at *7 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted*, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022) (granting bond hearing but not release).

Here, the Court concludes that the proper remedy in this instance is a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (clarifying that "the government should be held to a clear and convincing evidence standard of proof" in a bond hearing).

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Petitioner's Petition for writ of habeas corpus (Dkt. 1) be **GRANTED**, and that Respondents' request that the Petition be dismissed (Dkt. 5) be **DENIED**. Further, the Court should **ORDER** the Government to provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), within **fourteen (14) calendar days** of the Court's Order.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 2, 2026**, as noted in the caption.

Dated this 15th day of January, 2026.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13